IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                                    Case Nos.:        4:14cr77/MW/CAS
                                                         4:18cv163/MW/CAS

FREDERICK BUSH,
          Defendant.

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant Frederick Bush's

Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255

and memorandum in support.   (ECF Nos. 97, 98.)   The Government has

responded in opposition and filed an affidavit from former trial counsel

(ECF Nos. 104, 118, 119) and Defendant replied.   (ECF Nos. 108, 126.)

The case was referred to the undersigned for the issuance of all preliminary

orders and any recommendations to the district court regarding dispositive

matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed.

R. Civ. P. 72(b).   The court recommends that the § 2255 motion be denied

without an evidentiary hearing.   *See* Rules Governing Section 2255 Cases

8(a) and (b).

I. BACKGROUND and PROCEDURAL HISTORY

On December 3, 2014, Bush was charged in a three count indictment as follows:   Count One, possession with intent to distribute cocaine, cocaine base and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 841(b)(1)(D); Count Two, possession of a firearm in furtherance of a drug trafficking crime; and Count Three, possession of a firearm by a convicted felon.   (ECF No. 1.)   All of the conduct was alleged to have occurred on or about October 3, 2014.

Using a Confidential Informant ("C.I."), law enforcement conducted three controlled buys at the residence where Bush was staying before obtaining a search warrant in state court.   They discovered marijuana and powder cocaine, as well as cocaine base that appeared to be packaged for sale.   A firearm was also recovered from under a dresser in the room where Bush had been sleeping.

Assistant Federal Public Defender Joseph DeBelder, Esq., represented Bush from his February 11, 2015, first appearance until moving to withdraw in May, 2015, due to a conflict of interest between Bush and another client represented by the Federal Public Defender.   (ECF No. 27.)   The court appointed CJA Panel Attorney Mutaqee Akbar, Esq., to

represent Bush and continued the trial until the following trial term.   (ECF Nos. 28, 31.)   The jury trial took place on June 8 and 9, 2015.   Bush testified at trial.   He admitted he was a drug dealer and that he had been selling drugs from the residence as recently as one month before his arrest, but he claimed that neither the crack cocaine nor the gun located in the residence belonged to him.   He was convicted of Count One, and the jury could not reach a verdict on the firearm counts.   The Government moved to dismiss Counts Two and Three before the rescheduled trial.   (ECF Nos. 54, 55.)

The final Presentence Investigation Report ("PSR") reflected a total offense level of 24 and a criminal history category of V, yielding an advisory guidelines range of 92 to 115 months' imprisonment.   (ECF No. 61.)   The total offense level included a two-level adjustment for possession of the firearm.

The court sentenced Bush below the applicable guidelines range to a term of 84 months of imprisonment, followed by three years of supervised release.   (ECF No. 68, 87.)   Defense counsel argued for an even lower sentence, while the Government urged that a ten-year sentence would be appropriate given Bush's criminal history.   The court said that regardless

of how it had ruled on any of the objections, it would not have sentenced

Bush to one day less than seven years.   (ECF No. 87 at 87.)   Bush

immediately requested that the clerk file an appeal on his behalf.   (*Id.* at

93.)

The Eleventh Circuit rejected Bush's contention that the district court

abused its discretion in admitting certain evidence at trial and affirmed his

conviction.   (ECF No. 95.)    First, Bush challenged the admission of

testimony regarding his involvement in the three earlier controlled drug

sales.   The appellate court found that the evidence of the controlled buys

was intrinsic evidence that corroborated, explained and provided context

for the charged offense, and thus was not subject to analysis under Rule

404(b).   Additionally, it found that Rule 403 did not require exclusion of the

evidence because the probative value of the controlled buys was not

outweighed by any prejudicial effect.   Finally, it noted that any error in

admitting the evidence was harmless because, during his testimony, Bush

admitted selling crack cocaine around the time the controlled buys

occurred, and substantial other evidence supported his conviction.

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

Bush also challenged the admission of a photograph on his cell phone allegedly depicting a misshapen cookie of crack cocaine with a hole in the middle.   The Eleventh Circuit found this evidence, although not intrinsic, was properly admitted under Rule 404(b).   It was relevant to Bush's intent and countered his "mere presence" defense.   The court also found that any error in admitting the photograph was harmless because it was not integral to the Government's case and substantial other evidence supported the conviction.

Bush timely filed a § 2255 motion and supporting memorandum of law.   The Government opposes the motion.

## II. STANDARD OF REVIEW

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014).   Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to

collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657

F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is

reserved for transgressions of constitutional rights and for that narrow

compass of other injury that could not have been raised in direct appeal

and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn*

*v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

A district court need not reconsider issues raised in a section 2255

motion which have been resolved on direct appeal.    *Stoufflet v. United*

*States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701

F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340,

1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir.

1994).    Once a matter has been decided adversely to a defendant on

direct appeal, it cannot be re-litigated in a collateral attack under section

2255.    *Nyhuis*, 211 F.3d at 1343 (quotation omitted).    Broad discretion is

afforded to a court's determination of whether a particular claim has been

previously raised.    *Sanders v. United States*, 373 U.S. 1, 16 (1963)

("identical grounds may often be proved by different factual allegations . . .

or supported by different legal arguments . . . or couched in different

language . . . or vary in immaterial respects").

Issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.    *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."    *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 503 (2003).   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).    *Strickland*'s two-part test also applies to guilty pleas.    *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).   In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to

carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."   *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to

be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland*

test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34

(11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir.

2012).   Furthermore, counsel is not constitutionally deficient for failing to

preserve or argue a meritless claim.   *Denson v. United States*, 804 F.3d

1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*,

536 F.3d 1225, 1233 (11th Cir. 2008)).

   Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at

1313.   This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted. *Dingle*, 480 F.3d at 1099.

   An evidentiary hearing is unnecessary when "the motion and files and

records conclusively show that the prisoner is entitled to no relief."   *See* 28

U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir.

2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).

Not every claim of ineffective assistance of counsel warrants an evidentiary

hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d

707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must

allege facts that, if true, would prove he is entitled to relief.    *See*

*Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A

hearing is not required on frivolous claims, conclusory allegations

unsupported by specifics, or contentions that are wholly unsupported by the

record.    *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th

Cir. 2014) (explaining that "a district court need not hold a hearing if the

allegations [in a § 2255 motion] are . . . based upon unsupported

generalizations") (internal quotation marks omitted); *Peoples v. Campbell*,

377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that amount to

nothing more than conclusory allegations do not warrant a hearing.    *Lynn*,

365 F.3d at 1239.

III. DEFENDANT'S CLAIMS

The claims for relief identified on Bush's § 2255 form are vague and

lacking supporting facts.    His supporting memorandum identifies myriad

claims for relief, although many of these claims are likewise unsupported.

On the first and second pages of his memorandum Bush identifies

several potential grounds for relief in a seemingly introductory fashion.    On

the first page he identifies the following four independent claims: (1) he was

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

denied effective assistance of counsel; (2) his conviction was obtained by circumstantial evidence gained by an unconstitutional search of his fiancée's residence; (3) counsel failed to investigate and prepare for trial because he singularly focused on one (unidentified) aspect of the case while ignoring all other issues; (4) there was no evidence of Bush possessing any of the drugs for which he was indicted.   (ECF No. 98 at 9.)

On the second page of the memorandum, Bush makes three additional claims or arguments in a narrative fashion.   He asserts that the search of his fiancée's home was illegal because there was never any physical evidence presented to confirm that he conducted the alleged transactions with the C.I., including video or audio recordings.   (*Id.* at 10.) Second, he asserts that the testimony about the controlled buys was improper, an issue that was addressed on appeal.   Finally, he contends that the evidence of the controlled buys was improper because officers testified to events that were not recorded in their reports and they failed to recover the recorded currency used during the controlled buys.   (ECF 98 at 10.)   These claims are largely subsumed in subsequent sections of his memorandum which Bush separates into pretrial and trial claims.

A. <u>Claims related to pretrial proceedings</u>

1. <u>Advice Regarding Plea Agreements</u>

Bush first claims counsel incorrectly advised him that he should not attempt to enter into any plea agreement with the Government and that any attempt to do so could be brought to the attention of the jury.   (ECF No. 98 at 13.)   The argument is comprised entirely of legal citation and offers no factual support for his contention.

In Akbar's affidavit, counsel asserts that Bush was adamant that he wanted a trial and was not interested in a plea.   (ECF No. 118 at 2.) Akbar was appointed to represent Bush only five days before the trial date the court set while Bush was represented by his original attorney.   The facts that the case was already set for trial and the proximity of the trial date suggest that the question of a guilty plea was already off the table.   In Bush's reply, the contents of which were not sworn under penalty of perjury,[1] Bush in turn claims that counsel's response is a "complete fabrication" and claims that he would have considered entering a plea of guilty to Count One, but not the gun charges.   (ECF No. 108 at 10.) There is no record evidence that the Government would have been

---

[1] Only the "declaration of deposit" indicating the date of mailing is sworn.   (ECF No. 108 at 12.)

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

amenable to such a plea, and Bush has not met his burden of establishing counsel's ineffectiveness.

### 2. Pre-trial Investigation

Bush asserts that after Akbar's late appointment to Bush's case, Akbar did not conduct an adequate pre-trial investigation, instead relying on the Government's discovery.   Bush claims that if counsel had conducted an independent investigation into the case, he would have learned that: no confidential informant ever existed; there was no evidence of any communication between Bush and the alleged C.I.; neither the alleged C.I. nor the arresting officers ever mentioned firearms before Bush's arrest; and that Bush's link to the residence (one piece of mail and one prescription bottle) was tenuous and in fact he claims he no longer resided there.

Bush's assertion that the C.I. did not exist, a recurring theme in his motion, is unsupported.   The fact that he did not know that he was dealing with someone who was working as an informant does not establish that the person did not exist.   Bush admitted that before he moved, he had been selling cocaine about ten times a week from the residence, which would have been during the time frame when the C.I. reportedly made the three purchases.   (ECF No. 85 at 534.)   Bush's testimony that he did not

believe that the transaction with the C.I. had taken place as Detective

Green had testified and written in his report is self-serving and conclusory.

(*Id.* at 534-537.)   He declined to identify other individuals that he claims

may have been selling drugs at that time, repeatedly answering "I don't

know."   (*Id.* at 540-41.)

Bush's assertion that he no longer lived at the residence, and the

seized items did not belong to him, was the thrust of the defense presented

at trial.   (*See* ECF No. 83 at 6-7; ECF No. 118 at 2-3.)   Bush testified that

he lived at his fiancée's residence from the beginning of 2014 through

September, 2014, when he moved out.   (ECF No. 85 at 509.)   Other

witnesses also testified that he was living elsewhere.   (ECF No. 85 at 484,

497.)   Although he had purportedly moved out, at the time the search

warrant was executed, he was sleeping at the residence, he had both

marijuana and cocaine there, and he admitted having left behind a small

scale, because he had other scales.   (*Id.* at 511-12, 513.)   His position

was fully presented to the jury, and he has not shown that any acts or

omissions of counsel in this regard were constitutionally deficient.

3.   <u>Advice about sentencing exposure</u>

Bush asserts that counsel misadvised him about his potential sentencing exposure if he entered into a plea agreement with the Government.   (ECF No. 98 at 17.)   Bush claims counsel should have advised him that if he pleaded guilty to Count One he faced a 37-46 month sentence after credit for acceptance of responsibility.   Bush claims in his affidavit that if he had been properly advised of his sentencing exposure he would have pursued a plea of guilty as to this count.   (ECF No. 98 at 46.) His assertion flies in the face of his continued protestations of innocence, including his statements under oath at trial.   A defendant's insistence that he is innocent is a "relevant consideration" that "makes it more difficult to accept his claim" that he would have agreed to a plea deal.   *See Osley v. United States*, 751 F.3d 1214, 1224–25 (11th Cir. 2014).   A defendant who claims that ineffective advice led him to reject a plea offer must show that but for ineffective assistance of counsel, he would have accepted the plea, and that the conviction or sentence or both under the terms of the plea offer would have been less severe than under the judgment and sentence that were imposed.   *Lafler*, 566 U.S. at 164.   A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.   *Pericles v. United States*, 567 F. App'x 776, 782

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

(11th Cir. 2014) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015). Additionally, as noted above, Bush's assertion assumes, without any support, that the Government would have offered a guilty plea as to only one of the three counts of the indictment.   Based on the entirety of the record, Bush has not established counsel's performance was constitutionally deficient under *Strickland*.

### 4.   Pre-trial Motions and Challenges to the Evidence

Bush next claims counsel was constitutionally ineffective because he did not file any pretrial motions or challenge the Government's evidence. (ECF No. 98 at 18.)   Bush claims that counsel should have challenged the validity of the search warrant issued by the state court.   He believes that the supporting affidavit did not support the issuance of the warrant because it did not assert how law enforcement came to view the C.I. as reliable, it did not mention that no recordings had been preserved of either the transaction or phone records leading up to it, and it omitted the fact that there was "no evidence, outside of the officer's word" that any of the transactions had occurred.   (*Id.* at 22-23.)

When counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, to demonstrate actual prejudice, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Green v. Nelson*, 595 F.3d 1245, 1251-52 (11th Cir. 2010). Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence been excluded. *Jones v. United States*, 224 F.3d 1251, 1259 (11th Cir. 2000); *Huynh v. King*, 95 F.3d 1052, 1058–59 (11th Cir. 1996); *Thomas v. Newsome*, 821 F.2d 1550, 1552 (11th Cir. 1987); *see also Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005). In this case, absent the allegedly excludable evidence the prosecution's case would have been non–existent. However, a copy of the warrant is not in the record for the court to review, and Bush's conclusory allegations do not establish it was deficient.

To pass constitutional muster, a search warrant need only provide the issuing magistrate with sufficient information to determine the existence of probable cause that evidence of criminal activity exists in the premises to be searched.   *See United States v. Leon*, 468 U.S. 897 (1984); *Illinois v. Gates*, 462 U.S. 213 (1983).   The testimony provided at trial about the controlled buys sufficed, regardless of Bush's purported lack of knowledge or recollection that he sold drugs to a C.I.   Counsel was not constitutionally deficient for declining to file a meritless motion.   *Denson*, 804 F.3d at 1342; *Freeman*, 536 F.3d at 1233.

Bush further claims that counsel should have requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).   *Franks* requires a hearing when a defendant in a criminal proceeding makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in his affidavit for a search warrant and the allegedly false statement is necessary to the finding of probable cause.   Bush's allegations, set forth above, concern alleged omissions, not false statements, and there was no basis for counsel to request a *Franks* hearing.   Furthermore, the fact that he either does not recall or did not know he was dealing with a C.I. does not

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

require a *Franks* hearing, and counsel was not ineffective for not requesting same.

Bush next raises three issues relating to the identity of the confidential informant.   (ECF No. 98 at 23-24.)   He appears to contend that counsel should have requested that the Government reveal the identity of the confidential informant and provide records related to the informant. (ECF No. 98 at 23.)   In his affidavit Akbar notes that he made a strategic decision not to seek out an additional witness that could be adverse to Bush, considering that all indications were that the C.I. would identify Bush as to the person who sold drugs to the C.I.   (ECF No. 118 at 4.)   Based on Bush's admissions of drug dealing at the residence during the time frame that the transactions with the C.I. took place, the court cannot say that no competent or reasonable counsel would have made the same decision.   *Dingle*, 480 F. 3d at 1099.   Furthermore, whether Bush sold drugs to the C.I. was not dispositive of his guilt or innocence of the charges in the indictment.   As noted by the Eleventh Circuit, it merely "strengthen[ed] the link between Bush and the seized drugs."   (ECF No. 95 at 6.)

Bush next asserts that counsel should have filed a motion in limine to exclude or limit certain testimony.   (ECF No. 98 at 24.)   During the pre-trial hearing the court granted the motion in limine to exclude hearsay testimony from the officers supervising the controlled buys, absent some exception to the hearsay rule.   (ECF No. 83 at 30.)   Bush now claims Detective Green and Jarrick Williams should not have been allowed to "speculate" during their testimony at trial.   The "speculation" to which he refers may be Green's testimony, based on his observations and his training and experience, that other drug transactions took place at Bush's fiancée's home, in addition to the transaction with the C.I.   (ECF No. 84 at 64.)   This testimony was not improper, and it was subject to cross-examination.   Williams' testimony about an incident where Bush allegedly robbed a potential drug client at gunpoint, while perhaps inconsistent with other testimony, does not contain objectionable speculation.    Bush also appears to contend that prejudicial drug and firearm evidence should have been excluded.   The court assumes he is referring to the drugs and firearm that were seized during the execution of the warrant, although the drugs seized during the controlled buys was also introduced into evidence. Evidence may not be excluded merely because it is prejudicial.   Federal

Rule of Evidence 403 provides for the exclusion of relevant and probative evidence in the event the probative value of the evidence is outweighed by a danger of unfair prejudice.   Evidence directly related to the charges against a defendant, such as the controlled substances or firearm the defendant is accused of possessing, is not "unfairly" prejudicial.   Counsel was not ineffective for not moving to exclude the physical evidence.

Bush next asserts counsel should have moved to suppress the firearm.   He notes that law enforcement never expected to locate a firearm during the execution of the search warrant, the C.I. had never mentioned same, and Bush had vehemently denied ownership and knowledge of the firearm when it was discovered.   Bush's claim that there was no nexis between the firearm and the drugs recovered from his residence was a matter for argument before the jury.   The jury did not convict Bush of the two firearm charges, although the court ruled against Bush in upholding the two-level guidelines adjustment for the presence of a firearm.   The fact that the discovery of the firearm was unexpected was not a basis for counsel to have successfully moved to suppress the gun, particularly given the common knowledge that guns are frequently associated with the drug trade.

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

Bush has not shown that counsel's performance was constitutionally deficient.

### 5. Identity of the confidential informant

Bush again faults counsel for not pursuing the identity of the confidential informant.   (ECF No. 98 at 27-31.)   He complains that the jury heard he had engaged in multiple transactions with a C.I. who was never produced or identified, although Bush denied that he had engaged in such transactions or communicated with any informant.   (ECF No. 98 at 29.) The identity of the C.I. was not critical given Detective Green's role in the controlled buys.   Green drove the C.I. to Bush's then-residence and on two occasions waited in the car while the C.I. followed Bush into the residence and returned minutes later with crack cocaine, and on another occasion directly observed the exchange.   There was neither any legal basis to require the Government to reveal the identity of the informant nor any reason to believe that identification of the C.I. would have affected the outcome of this case.

### 6. Statements of Government Witnesses

Bush asserts that counsel was constitutionally ineffective because he did not request a continuance when the Government provided statements

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

from some of its potential witnesses to the defense less than one week before trial.   (ECF No. 98 at 31.)    Bush references statements of the jail-house witnesses in his affidavit, but he does not explain which statements needed investigation or how this impacted the proceedings.   (ECF No. 98 at 49.)   His conclusory assertions do not entitle him to relief.

### 7. Claims Raised Via Affidavit

Although not styled as separate claims for relief, Bush mentions myriad additional alleged deficiencies in counsel's performance in his affidavit.   (ECF No. 98 at 46-51.)   For instance, he notes numerous times that he asked counsel to request a continuance (although he had objected to previous counsel's agreeing to a continuance).   He offers nothing from which the court can conclude that a continuance would have altered the outcome of the proceedings, particularly in light of his protestations of innocence.

Bush also states that he advised counsel to move for dismissal of the indictment before trial.   There was no viable Fourth Amendment claim and Bush offers no alternative basis for such a motion.

Bush complains that he was not provided with all discovery, copies of the grand jury transcripts, or the opportunity to conduct depositions, and

that counsel did not file a motion for subpoena duces tecum.   Again, he

has not shown that he was either entitled to the items requested or

prejudiced by the fact that they were not provided.

Bush's complaint that counsel failed to file an appeal as requested is

spurious, as the clerk filed a notice of appeal on his behalf upon his

request.   He contends that counsel never consulted with him about the

appeal and Bush was unable to contact him about the issues he believed

should be raised and the concerns he was having.   Due process of law

requires that a defendant receive effective assistance of appellate counsel

on his direct appeal.   *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).

However, the Sixth Amendment does not require appellate advocates to

raise every non-frivolous issue on appeal if counsel, as a matter of

professional judgment, decides not to do so.   *Smith v. Robbins*, 528 U.S.

259, 287–88 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 126–127

(2009).   It is possible to bring a *Strickland* claim based on counsel's failure

to raise a particular claim, but it is difficult to demonstrate in such a

situation that counsel's performance was constitutionally ineffective.

*Smith*, 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.

1986) ("Generally, only when ignored issues are clearly stronger than those

presented, will the presumption of effective assistance of counsel be overcome")); *see also Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing *Smith*).   "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."   *Barnes,* 463 U.S. at 751–52.   Bush has offered no supporting facts for this claim, and no relief is warranted.

      B. Claims related to trial

      1. Testimony of Detective Bobby Green

Bush asserts that trial counsel should have objected to the Detective Green's testimony about the transactions with the confidential informant as hearsay.   (ECF No. 98 at 32.)   In fact, counsel made more than one hearsay objection, which the court overruled.   (ECF No. 84 at 43, 95 138-39.)   Bush also claims that Green's testimony was at times speculative, for instance when he said that it appeared Bush conducted a drug transaction with the occupants of a vehicle that pulled into his driveway while law enforcement had the residence under surveillance.   Green's testimony about what he observed was not improper based on his experience, and it was subject to cross-examination.

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

Finally, Bush claims that allowing Green's testimony was a violation

of the confrontation clause.   (ECF No. 98 at 34-36.)   Green did not testify

about what the C.I. said.   Rather, his testimony about what transpired with

the C.I. was used to explain how law enforcement was able to secure a

warrant for Bush's fiancée's residence.   *See United States v. Churchwell*,

465 F. App'x 864 (11th Cir. 2012).   There was no violation of the

confrontation clause, and even if there had been, there was no plain error,

so counsel was not constitutionally ineffective for not objecting.   *Id.*

### 2. Presentation of Hearsay Evidence

Bush contends that counsel's performance was constitutionally

deficient because counsel did not object and prevent the introduction of

hearsay evidence provided by the Government.   (ECF No. 98 at 39-41.)

As noted previously, counsel objected to Green's testimony more than

once, and the court overruled the hearsay objection.   (ECF No. 84 at 138-

39.)

### 3. Advice concerning decision to go to trial

Bush states that counsel advised him to go to trial because he could

"beat the charges" since the Government had only circumstantial evidence

against him.   (ECF No. 98 at 41.)   Bush maintains that because of

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

counsel's advice, he rejected the idea of pleading guilty and went to trial.

Counsel disputes Bush's statement, averring that as a practice he never

advises clients to go to trial or take a plea, leaving the decision to them.

(ECF No. 118 at 5.)   As previously stated, there is no evidence Bush was

offered a plea which would have resulted in a 37-46 month sentence as he

now claims.   Furthermore, through and beyond trial, Bush continued to

maintain that the crack cocaine at the residence was not his.   (*See* ECF

No. 61, PSR ¶ 21.)   Finally, counsel's prediction, at least with respect to

the firearm charges, was correct, and Bush was not convicted of the more

serious charges.

### 4. Prosecutorial Misconduct/Presentation of Perjured Testimony

Bush contends that the Government improperly offered the perjured

testimony of Detective Green, Officer Wilkerson, Jarrick Williams and

Demetrius Speed to "establish and bolster its case against" him.   (ECF No.

98 at 41-42.)   Bush persists in his claim that Green's testimony was

improper because there was no C.I., and no controlled buys ever took

place.

Bush asserts that Wilkerson testified falsely about how law

enforcement determined Bush still lived at the residence.   (ECF No. 98 at

42.)   Wilkerson testified that law enforcement observed a Cadillac S.U.V. at the residence, and it was his understanding that's what Bush and his fiancée were driving at the time.   (ECF No. 84 at 245.)   This would have been impossible, Bush contends, because his fiancée purchased the vehicle in question on the same date law enforcement obtained the search warrant, although he offers no proof of this.

Bush also claims that Williams' testimony about an incident where Bush allegedly robbed one of his "clients" was false, and that Williams should not have been permitted to testify about a photo of a crack cocaine cookie with a hole in the middle found on Bush's phone, which Williams never saw.   (ECF No. 98 at 42.)   Williams was asked about whether Bush had ever told him about a funny situation regarding some crack.   (ECF No. 84 at 345.)   He explained how Bush had told him about accidentally making a crack cocaine cookie with a hole in the center, like a doughnut. The "doughnut picture" was discussed at the pre-trial hearing and the court reserved ruling on its admissibility.   (ECF No. 83 at 19-21.)   No further objection was made at trial.

Finally, Bush claims that Speed's testimony about the men's prior dealings was perjured, and that when this became apparent at trial the

Government did nothing to try to correct or exclude Speed's testimony. (ECF No. 98 at 43.)   Speed testified that he began selling Bush cocaine towards the end of 2013, without offering a specific date.   (ECF No. 84 at 310, 325.)   When pressed on cross-examination, Speed thought it might have been October.   Akbar then impeached Speed's testimony by telling Speed that Bush had been in prison from August of 2013 through December of 2013.   On re-direct Speed noted that he dealt with Bush maybe into March of 2014.

To the extent this claim is asserted as alleging a constitutional violation caused by the Government's presentation of perjured testimony, it is procedurally barred.   Allegations of prosecutorial misconduct, particularly of the kind herein, could have been raised on appeal and are procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley*, 523 U.S. at 621; *McKay,* 657 F.3d at 1195.   Furthermore, as noted by counsel, no claim of prosecutorial conduct could lie because "there was no evidence the Government was aware of the perjured testimony offered by one of the witnesses."   (ECF No. 118 at 5.)

IV. <u>CONCLUSION</u>

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

An evidentiary hearing is not necessary to resolve Bush's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877.   Bush has not established that his attorney's performance was constitutionally deficient under *Strickland.*   Viewing the record as a whole, he cannot show that counsel's performance was in any respect unreasonable and that he was prejudiced by any alleged action or omission.   Therefore, his motion should be denied in its entirety.

## V. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation

Case Nos.: 4:14cr77/MW/CAS; 4:18cv163/MW/CAS

omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The motion to vacate, set aside, or correct sentence (ECF No. 97) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 6th day of March, 2020.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**